## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLE R. HORN, as Executrix | : | Civil No. 1:12-CV-1556 |
| of the Estate of Theresa Smith, | : | |
| | : | (Chief Judge Conner) |
| Plaintiff | : | |
| | : | (Magistrate Judge Carlson) |
| v. | : | |
| | : | |
| STATE FARM MUTUAL | : | |
| AUTOMOBILE INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

The above-captioned action, which arises under the Court's diversity jurisdiction, involves a dispute over the amount of uninsured motorist benefits that the plaintiff is entitled to collect from the defendant under the terms of an automobile insurance policy. The case comes before this Court on cross motions for summary judgment, with both parties agreeing that judgment is appropriate as matter of law, and each party claiming it is entitled to judgment as a matter of law in their favor. (Docs. 11, 16) The motions are fully briefed and ripe for disposition.

As discussed below, the factual background to this action appears to be entirely undisputed; instead, the parties merely have a fundamental disagreement about the

application of Pennsylvania motor vehicle insurance law to the agreed-upon facts at issue in this case. Upon consideration, we find that those facts show that the plaintiff is entitled to receive from the defendant $100,000 of UM/UIM[1] insurance benefits available under the policy because Teresa Smith never elected to accept reduce coverage, but instead appeared only to acknowledge the availability of reduced coverage while declining to specify lower coverage amounts in forms that she submitted to the insurer after she assumed the policy in 1992. The defendant's own insurance forms that were provided to her made clear that if she did not specifically waive or select reduced coverage limits, her policy limits for UM and UIM coverage would be equal to the coverage limits for bodily injury. As discussed below, the documents on which the defendant relies shows that Ms. Smith – unlike her ex-husband – never selected lower coverage limits, and instead signed the acknowledgment form without waiving or reducing her coverage, a form that instructed her that if she did not select reduced coverage, she would be entitled to coverage equal to the coverage limits for bodily injury – in this case, $100,000.

Accordingly, for the reasons that follow, we recommend that the plaintiff's motion be granted, and the defendant's motion be denied.

_____

[1] The case law in this field commonly refers to "uninsured" and "underinsured" coverage as "UM/UIM" coverage.

## II.    BACKGROUND

Teresa Smith was a named insured on a motor vehicle insurance policy that her former husband, Clayton Smith, had obtained from State Farm Mutual Automobile Insurance Company.   At the time of the application, Clayton Smith selected liability coverage limits of $100,000 per person and $300,000 per occurrence.  (Doc. 14, Appendix to Def. Statement of Material Facts, Ex. A, Application for State Farm Automobile Insurance)  On December 30, 1986, Mr. Smith signed a document that expressly agreed to reduced limits for UM/UIM coverage under the policy, in the amount of $15,000 and $30,000, respectively – amounts that Mr. Smith appears to have written into the document when he selected reduced coverage.  Mr. Smith also signed an "Important Notice" pursuant to 75 Pa. Cons. Stat. § 1791.  (Doc. 14, Ex. B, Acknowledgment of Coverage Selection Form and Important Notice)   Under the terms of the policy, Clayton Smith was the first named insured and Teresa Smith was the second named insured.

On September 5, 1991, Clayton and Theresa Smith divorced.  (Doc. 13, Def. Statement of Material Facts, ¶ 4)  On January 8, 1992, Clayton Smith was removed from the State Farm policy and the policy was assumed by Teresa Smith.  (Doc. 14, Ex. C, Change Memo)  On the same day that she assumed the policy, Teresa Smith signed a new Section 1791 "Important Notice" and elected full tort coverage, thereby

enhancing the scope of her coverage under the policy. (Doc. 14, Ex. D, Important Notice dated January 8, 1992)

Around the time that she assumed the subject policy in 1992, Teresa Smith signed an Acknowledgment of Coverage Selection Form. This document contains the following statement: "Uninsured Motor Vehicle – Coverages U and U3 are available with limits up to $100,000 per person and $300,000 per accident or with limits up to the Bodily Injury Liability Limits, whichever is higher. *Coverage U and U3 must be written at these limits unless the named insured selects lower limits or rejects the coverages entirely.* (Minimum limits are the financial responsibility limits for bodily injury liability.")(emphasis added.) The form also has a pre-printed section that states that the insured "acknowledge[s] that I have been given the opportunity to purchase Uninsured Motor Vehicle Coverage limits up to $100,000/$300,000 or my Bodily Injury Liability Limits, which is higher, but instead . . . ." and contains a section where the insured can select lower coverage limits "in lieu of the higher limits made available to me." This form is substantively identical to the one that Clayton Smith executed in 1986, and on which he specifically selected lower UM coverage limits of $15,000 per person and $30,000 per incident. Thus, the form executed by Teresa Smith plainly told her that she would receive the full UM/UIM coverage unless she specified some lower amount of desired coverage.

Knowing this, Ms. Smith signed the form but did not specify a lower coverage amount, an act which the form told her would result in the policy being written as a policy with $100,000/$300,000 UM/UIM limits. Notably, although this section of the document bears Ms. Smith's signature, the section for selecting lower coverage limits was left blank, and thus it appears that Ms. Smith did not specifically select lower UM coverage amounts. (Doc. 14, Ex. E, Acknowledgment of Coverage Form)

After assuming the subject policy and making these initial changes to her coverage limits, Ms. Smith continued to pay premiums and maintained the insurance for the time period relevant to this suit.

On September 26, 2009, Teresa Smith was a guest passenger on a motorcycle operated by Michael Grable when it was involved in a motor vehicle accident with Justin Keeney, who was uninsured. (Def. SMF ¶ 8.) Ms. Smith sustained significant injuries as a result of this incident. Following the accident, Ms. Smith made a claim for UM benefits under Michael Grable's insurance policy with American Modern Home Insurance Company. As a result, she collected the UM limits of $25,000 from American Modern Home. (Id. ¶ 9.) After collecting these benefits, Ms. Smith made a claim for UM benefits under the State Farm policy. At that time a dispute arose between the parties regarding the limits for UM coverage under her policy. State Farm tendered Ms. Smith the $15,000 that she was undisputedly entitled to receive,

without prejudice to her seeking to collect the remaining $85,000 that she believed she was entitled to through further legal action.

Ms. Smith died prior to the commencement of this lawsuit, which is being prosecuted by Nichole Horn, the executrix of Ms. Smith's estate.

## III. DISCUSSION

### A. Rule 56 - Legal Standard

The parties have cross-moved for judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow

a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

**B.** **The Evidence Shows that Teresa Smith Executed a New "Sign Down" Form That Manifestly Did Not Provide For Lower Coverage Limits for UM/UIM Benefits**

The parties frame the legal issue before the Court somewhat differently, but with chief focus on the statutory requirements of Pennsylvania law regarding reduced UM/UIM coverage limits in cases where an insured assumes an insurance policy in which her former spouse had originally requested reduced UM coverage. For her part, the plaintiff suggests that this case involves:

> the very simple question of whether a motor vehicle insurance company . . . must secure a new "sign down" of under-insured/un-insured coverage (hereinafter collectively "UIM coverage") pursuant to 75 Pa. C.S. § 1734 where:
>
> - a female insured, prior to her divorce, was covered by a motor vehicle insurance policy with all motor vehicle decisions for the marital household having been made by the former spouse;
>
> - the spouses divorce;
>
> - the now divorced female insured changes the terms and conditions of her motor vehicle insurance after her divorce;
>
> - the pre-divorce sign down of UIM coverage was provided by her former spouse;
>
> - the now divorced female insured changed her coverages from the pre-divorce policy by eliminating her former spouse from the policy and by increasing the nature and quality of her coverage by changing the former

> spouse's pre-divorce limited tort election to a post-divorce full tort policy; and
>
> - the insured did not obtain a new sign-down of UIM coverages as required by 75 Pa. C.S.A. § 1734.

(Doc. 16, at 1-2)  For its part, the State Farm presents the issue succinctly as follows:

> Whether Section 1734 of the Pa. MVFRL requires an insurer to obtain a new "written request" for reduced uninsured motorist ("UM") coverage from an insured when a policy of insurance is transferred to and assumed by an insured where the policy previously carried UM limits in amounts less than the liability coverage per a valid election for reduced UM coverage pursuant to Section 1734?

Thus, the parties focus their analysis on whether the relevant statutory law, in this case Section 1734 of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), <u>required</u> State Farm to obtain a new "sign down" from Teresa Smith after she assumed the insurance policy following her divorce from Clayton Smith, or whether Clayton Smith's original request for reduced UM/UIM coverage remained binding on Ms. Smith following her assumption of the policy.

If this were an accurate summary of the relevant legal issue in this case, the defendant would have the better argument.  Indeed, the United States Court of Appeals for the Third Circuit addressed a similar issue, under similar facts, in <u>Nationwide Mutual Insurance Company v. Buffetta</u>, 230 F.3d 634 (3d Cir. 2000).  In that case, Rosetta Buffetta was married to Saverio Buffetta at the time when Mr.

9

Buffetta obtained an automobile insurance policy from Nationwide in 1981. At the time he purchased the policy, Mr. Buffetta selected bodily injury liability limits and UM coverage limits in the same amount, $25,000 per person, and $50,000 per occurrence. On October 22, 1994, however, Mr. Buffetta requested an increase in the liability limits to $100,000 per person and $300,000 per occurrence, while at the same time executing an Uninsured Motorist Coverage Authorization Form electing to maintain coverage limits of $25,000 per person and $50,000 per occurrence.

Also in October 1994, the Buffettas filed for divorce, although they continued to reside together in Philadelphia. Their divorce became final in March 1995, and later that year Saverio Buffetta moved to Italy, after transferring title of the automobile insured under the Nationwide policy to Ms. Buffetta. Upon taking title to the car, Ms. Buffetta notified Nationwide of the divorce and requested that the policy be placed in her name. On July 10, 1995, the named insured/policyholder identified on the declaration pages of the policy was changed to Rosetta Buffetta. Ms. Buffetta never signed any written authorization requesting uninsured motorist limits lower than bodily injury limits.

In February 1997, Ms. Buffetta's father was struck and killed by an uninsured motorist. Ms. Buffetta's father's estate made a claim on the Nationwide policy for recovery of uninsured motorist benefits, and Ms. Buffetta contended that

Nationwide's liability for UM coverage should not have been limited to $25,000

because she had never executed a writing requesting or selecting reduced UM

coverage after assuming the policy from her ex-husband. Thus, she contended that

section 1734 of Pennsylvania's Motor Vehicle Financial Responsibility Law required

her as a named insured to have a signed written authorization and that, since she had

never signed such an authorization, the insurance policy should be "reformed" in

order to permit the same limits for UM coverage as for bodily injury. Nationwide

disagreed, arguing that reformation was unavailable as a remedy under the MVFRL,

and maintaining that the statute was complied with because a written authorization

for the reduction of the uninsured motorist coverage had been executed by the named

insured of the policy, which at that time had been Saverio Buffetta. Id. at 636-37.

With the parties' arguments thus presented, the district court framed the issue

as follows:

> Does the failure of the insurer to obtain new uninsured
> motorist election forms upon the change of the named
> insured from the husband to the wife following divorce
> require the reformation of the uninsured motorist coverage
> limits to the higher liability limits of coverage?

Id. at 637. Reviewing the record, the district court found that Nationwide had simply

been requested to maintain the policy for the same vehicle at the same address, with

Rosetta Buffetta as the new named insured. The district court also found that Ms.

Buffetta continued to receive billings with coverage listings, and she paid the premiums and the policy had been renewed at least three times before the accident resulting in a UM claim, but at no time had Ms. Buffetta requested coverage changes. Id. Although expressing doubt as to its ability to reform an insurance policy to the higher UM/UIM limits in the absence of a statutory provision to that effect, the district court ultimately resolved the dispute by focusing on Nationwide's argument that section 1734 had not been violated because the section only requires a written authorization request for lower UM/UIM limits, and Saverio Buffetta as the named insured had signed such a form. Id. at 638-39.

The Third Circuit affirmed the district court's ruling in Nationwide's favor on substantially the same grounds. In its ruling, the Third Circuit

> predict[ed] that the Pennsylvania Supreme Court would hold that where the new named insured was covered by the existing policy when the written reduction was effected, and became a named insured with ample opportunity to alter the coverage under the policy, having received ongoing notice of the amount of coverage under her policy, and having paid premiums that took such coverage limits into account, she was bound by the coverage choices made by the previous named insured under the policy.

Id. at 642.

Notwithstanding the holding in Buffetta, which remains good law, we do not agree that its holding controls the outcome in the instant action, because the cases are

factually distinct.  We begin with an overview of the MVFRL before turning to the relevant facts in this action.

In <u>Lewis v. Erie Insurance Exchange</u>, 568 Pa. 105, 107, 793 A.2d 143 (2002), the Pennsylvania Supreme Court explained that in enacting the Motor Vehicle Financial Responsibility Law, 75 Pa. Cons. Stat. Ann. §§ 1701-1799.7, Pennsylvania's General Assembly was concerned with containing rising insurance costs.  793 A.2d 143, 151 (Pa. 2002).  The court also observed that the requirements under the MVFRL with respect to UM/UIM coverage were intended to promote recovery for accident victims in the event that negligent motorists were not adequately insured.  <u>Id.</u>  As a result, Pennsylvania courts have held that the MVFRL should be interpreted in a manner to provide the greatest coverage to injured claimants.  <u>Motorists Ins. Co. v. Emig</u>, 664 A.2d 559, 566 (Pa. Super. Ct. 1995).  Thus, "[i]n any doubtful or close cases, the court must interpret the intent of the legislature to provide the greatest coverage for the insured."  <u>Transguard Ins. Co. of America v. Hinchey</u>, 464 F. Supp. 2d 425, 434 (M.D. Pa. 2006) (citing <u>Emig</u>, 664 A.2d at 566).

Thus, Pennsylvania's Motor Vehicle Financial Responsibility Law, as amended in 1990, sets forth the requirements regarding UM/UIM coverage in insurance policies issued in Pennsylvania.  The law provides that although UM/UIM coverage

is optional, no motor vehicle insurance policy may be issued in Pennsylvania unless UM/UIM coverage is offered or supplemented in the amounts provided for in § 1734. See 75 Pa. Cons. Stat. Ann. § 1731(a). The MVFRL also provides that a named insured may request in writing UM/UIM coverage in an amount less than the limits of liability for bodily injury. 75 Pa. Cons. Stat. Ann. § 1734 ("A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury."). Relatedly, section 1731 of the MVFRL permits an insured to reject UM motorist coverage entirely, but only upon the signing of a specific waiver form provided in the statute. 75 Pa. Cons. Stat. Ann. § 1731(b).

Thus, "a named insured may lower her statutorily provided UIM coverage limits by requesting in writing of her insurer to do so. The insurance company's obligation to issue a policy with [UM/UIM] coverage in an amount equal to the policy's bodily injury liability coverage is not relieved unless it has received such a written request." Blood v. Old Guard Ins. Co., 934 A.2d 1218, 1226 (Pa. 2007). Additionally, the Pennsylvania Superior Court has summarized what an insurer must receive from its insured in order to effect a valid request for UM/UIM reduced coverage:

> [i]n order to effect a valid request for reduction pursuant to § 1734, the named insured's written request must (1) manifest the insured's desire to purchase uninsured and underinsured coverage in amounts equal to or less than the bodily injury limits; (2) be signed by the named insured; and (3) include an express designation of the amount of uninsured and underinsured coverage requested. Hence to conform with § 1734, the written request must be signed by the insured and must contain an express designation of the amount of coverage requested, all manifesting the insured's desire to purchase coverage in amounts less than the bodily injury limits.

Nationwide Mut. Ins. Co. v. Catalini, 18 A.3d 1206, 1209 (Pa. Super. Ct. 2011) (citations and quotation marks omitted); see also Weilacher v. State Farm Mut. Auto. Ins. Co., 65 A.3d 976 (Pa. Super. Ct. 2013).

Notably, the Pennsylvania Supreme Court has also held that once an insured requests reduced UM/UIM coverage, which was not thereafter changed, an insurer is not required to obtain new UM/UIM sign down forms each time a policy holder changes the liability limits under an insurance policy. Blood, 934 A.2d at 1226-27; see also Blood v. Old Guard Ins. Co., 894 A.2d 795, 799 (Pa. Super. Ct. 2006) (Melvin, J., dissenting) ("When an applicant initially purchases an auto insurance policy, it is presumed that UM/UIM coverage will equal bodily injury limits unless the applicant signs a form electing to reject UM/UIM coverage or requests in writing to purchase lower UM/UIM coverage. However, after a rejection or reduction of

UM/UIM coverage has been made, the MVFRL does not explicitly require a new UM/UIM sign down form each time a policyholder changes the liability limits.").

With these legal guideposts in mind, we consider the issue presented in the instant action. In doing so, we do not fully agree with the parties regarding the relevant legal issue before the Court. Whereas the plaintiff and defendant essentially argue over whether Pennsylvania law mandates that State Farm must have obtained a new sign down form from Teresa Smith when she assumed the insurance policy from her ex-husband, the law appears reasonably clear that State Farm was not obligated to do so. As the Third Circuit noted in <u>Buffetta</u>, and as the foregoing decisions from the Pennsylvania Superior and Supreme Courts indicate, an insurer is not required automatically to obtain new sign down forms and reduced coverage requests in such circumstances. Moreover, as the Pennsylvania Supreme Court noted in <u>Blood</u>, an insurer is not obligated to obtain new UM/UIM sign down forms in cases – like this one – where an insured makes changes to the coverage limits under the policy, where the original sign down forms complied with the MVFRL's requirements.

However, in this case the evidence submitted by State Farm actually shows that Teresa Smith not only changed, and enhanced, the quality of her insurance coverage for bodily injury, but she signed and submitted a form containing an acknowledgment

regarding Pennsylvania law governing UM/UIM coverage that did <u>not</u> provide for a reduction in available coverage. (Doc. 16-2, Ex. D) That notice summarized the MVFRL by noting that "Pennsylvania law requires that no motor vehicle liability insurance policy shall be delivered or issued for delivery unless coverage has been made available for bodily injury for persons who are legally entitled to recover damages from owners or operators of underinsured motor vehicles." (<u>Id.</u>) That same form provided that coverage limits were available up to $100,000 per person and $300,000 per accident, or with limits up to the bodily injury liability limits under the policy, whichever is higher. (<u>Id.</u>) The form explicitly states that "[UM/UIM] coverage must be written at these limits unless the named insured selects lower limits or rejects the coverage entirely." (<u>Id.</u>)

The form then contains a section where the named insured – on this form, Teresa Smith – "acknowledge[s] that I have been given the opportunity to purchase Underinsured Motor Vehicle Coverage limits up to $100,000/$300,000 or my Bodily Injury Liability limits, whichever is higher but instead . . . ." (<u>Id.</u>) At this point, the form contains a section where the insured has an opportunity to write in a reduced amount of coverage "in lieu of the higher limits made available to me." On the insurance forms Teresa Smith signed, however, she plainly did not include any amounts for reduced coverage, but instead simply signed the acknowledgment

regarding Pennsylvania UM/UIM law, which itself informed her that "unless [she] select[ed] lower limits or reject[ed] the coverage entirely," UM/UIM coverage limits "must be" written at $100,000/$300,000 or the limits for bodily injury coverage under the policy, whichever amount is greater.

Thus, although we agree with State Farm that the insurer was not under a legal obligation to obtain a new sign-down form from Teresa Smith when she assumed the insurance policy from her ex-husband and became the sole named insured under the policy, we nevertheless find that the documents Teresa Smith executed in the course of assuming, and altering, the insurance policy at issue also show that she signed a form acknowledging the availability of reduced UM/UIM coverage, but did not specifically elect reduced coverage in any amount. Since "to conform with § 1734, the written request must be signed by the insured and must contain an express designation of the amount of coverage requested, all manifesting the insured's desire to purchase coverage in amounts less than the bodily injury limits," Nationwide Mutual Insurance Co. v. Catalini, 18 A.3d 1206, 1209 (Pa. Super. Ct. 2011), and since the forms that State Farm accepted from Teresa Smith did not contain any specific sign down amounts in reduced UM/UIM coverage limits, we find that Teresa Smith's affirmative act of declining to reduce her UM/UIM coverage, an act which she was told would lead to coverage of $100,000/$300,000, distinguishes this case

from Buffetta, where it does not appear that the insured ever executed a similar form in a similar fashion. Furthermore, we are cautioned that in "any doubtful or close cases, the court must interpret the intent of the legislature to provide the greatest coverage for the insured." Transguard Ins. Co. of America v. Hinchey, 464 F. Supp. 2d 425, 434 (M.D. Pa. 2006) (citing Emig, 664 A.2d at 566). Upon careful consideration, we find that this is one such "doubtful or close" case, made so by the fact that the insurer accepted insurance documents from a new named insured under an existing policy, including documents in which the named insured acknowledge the availability of UM/UIM coverage under the law, the way in which such coverage limits may be reduced, and then – in marked contrast to the prior named insured[2] – signed the acknowledgment without providing for any specific amount of reduced coverage. Because the very forms that the insured signed informed her that if she did not select lower limits she would be entitled to UM/UIM coverage up to the limits of her bodily injury coverage, and because close cases should be resolved in favor of the insured, we conclude that State Farm has not demonstrated that it is entitled to summary judgment in its favor. To the contrary, the insurer's own documents

_____

[2] In the documents that he executed, Clayton Smith not only signed the acknowledgment form that was substantially similar to that signed by Teresa Smith, but he wrote in specific reduced coverage limits of $15,000 per person and $30,000 per occurrence. As noted, Teresa Smith did not write in any reduced amounts on the form that she submitted to State Farm.

undermine its position in this case, distinguish this case from the decision in <u>Buffetta</u> on which State Farm relies, and compel us to find that judgment in favor of the plaintiff is warranted.

## IV.   <u>RECOMMENDATION</u>

For the foregoing reasons, IT IS HEREBY RECOMMENDED THAT the plaintiff's motion for summary judgment (Doc. 16) be GRANTED and the defendant's motion for summary judgment (Doc. 11) be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 25th day of September 2013.

                                      ***S/Martin C.  Carlson***

                                      Martin C. Carlson

                                      United States Magistrate Judge

-